

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-3-2008

# Rudolphus v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4684

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Rudolphus v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1482.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1482

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4684
_____

ANDREAS RUDOLPHUS,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A96-265-189)
Immigration Judge:  Honorable Vincent Ferlise

_____

Submitted Under Third Circuit LAR 34.1(a)
January 29, 2008

Before:  SCIRICA, Chief Judge, and RENDELL, Circuit Judges
and THOMPSON, *District Judge.

(Filed: March 3, 2008)

_____

OPINION OF THE COURT

_____

_____

*Honorable Anne E. Thompson, Senior Judge of the United States District Court for the
District of New Jersey, sitting by designation.

RENDELL, *Circuit Judge*.

Andreas Rudolphus, a citizen of Indonesia, petitions for review of the final order

of the Board of Immigration Appeals ("BIA") denying his applications for asylum,

withholding of removal, and relief under the Convention Against Torture (CAT).  For the

reasons discussed below, we will deny Rudolphus' petition.


## I.  Facts

Rudolphus claims that he was persecuted in Indonesia ever since his childhood,

due to his Christian religion and Chinese ethnicity, and maintains that he would be

persecuted again if forced to return.  As support for his claim of past persecution,

Rudolphus recounted the following incidents in testimony before the Immigration Judge

("IJ") and/or in an affidavit that he submitted to the IJ:

- In April 1979, several Muslims kicked him off his bicycle, forced him at knife
  point to give them his money and his bicycle, and called him "stupid Chinese."
  (A.R. 68-69, 386.)
- In May 1998, during the widespread riots targeting ethnic Chinese, 15 Muslims
  yelling anti-Chinese slurs broke into his house, spit on him and punched him in the
  head as he fled for safety, looted the house, and set fire to his father's car.  The
  police did not help find the looters.  (A.R. 69-70, 386-87)
- During the May 1998 riots, his uncle's house was looted and burned down by

2

native Indonesians.  (A.R. 386.)

• In July 1998, two native Indonesians on a motorcycle pulled up alongside his cousin's car, pointed a knife at his cousin, and demanded his money.  His cousin was able to speed away from them, but not before they fired two bullets at his car, shattering a side view mirror and side window. (A.R. 73-74, 387.)

• In June 1999, two native Indonesians kicked him off his motorbike, approached him with a knife, said "Dirty Chinese, give us your money," and took his money and motorbike.  (A.R. 72, 386.)

• In January 2000, Rudolphus traveled to Jakarta to see a friend, but his friend was not at the train station to meet him when he arrived.  A Muslim offered to give Rudolphus a ride to his friend's house.  The stranger drove Rudolphus to a quiet street where he and one or more other people held up Rudolphus at knife point, said "Dirty Chinese, take off our watch and give me your bag," and took his watch, bag, and money.  (A.R. 71-72, 387.)

• He wanted to become a pastor, but did not do so because he thought it would put his life in jeopardy because of the country's Muslim majority and the fact that "many churches are burned in Indonesia."  (A.R. 75-76.)

In addition, Rudolphus submitted to the IJ a collection of articles and reports as support for his claim that he would face persecution if he returned there.

3

## II. Asylum

The IJ denied Rudolphus' asylum claim because his application was filed more than one year after his arrival in the United States and Rudolphus failed to established the existence of extraordinary or changed circumstances to justify his untimely filing. *See* 8 C.F.R. § 1208.4(a). The BIA adopted and affirmed this portion of the IJ's decision. We do not have jurisdiction to review this issue. 8 U.S.C. § 1158(a)(2)-(3); *Jarbough v. Att'y Gen.*, 483 F.3d 184, 188 (3d Cir. 2007).

## III. Withholding of Removal

In order to qualify for withholding of removal, an applicant must demonstrate that it is more likely than not that he will be persecuted if forced to return to the proposed country of removal. *Mulanga v. Ashcroft*, 349 F.3d 123, 132 (3d Cir. 2003). A rebuttable presumption arises that an applicant has met this standard if he establishes that he suffered "past persecution" in that country. 8 C.F.R. § 208.16(b)(1). An incident or series of incidents constitutes "persecution" if (1) it occurred on account of the applicant's race, religion, nationality, membership in a particular social group, or political opinion; (2) it was carried out by the government or by forces that the government was either unwilling or unable to control; and (3) the harm suffered was sufficiently severe. *Mulanga*, 349 F.3d at 132. The last prong sets a high bar and is only fulfilled by "[t]hreats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to

life or freedom." *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993). Persecution "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Id.* Therefore, "[a]busive treatment and harassment, while always deplorable" do not always qualify. *Jarbough*, 483 F.3d at191.

An applicant can also prove that it is more likely than not that he will be persecuted upon returning to the proposed country of removal by establishing that, within that country, there is a "policy or practice" of persecuting persons similarly situated to the applicant. 8 C.F.R. § 208.16(b)(1). To qualify as a "pattern or practice," the persecution must be "systemic, pervasive, or organized." *Lie v. Ashcroft*, 396 F.3d 530, 537 (3d Cir. 2005) (internal quotation marks omitted).

We have jurisdiction over the BIA's denial of withholding of removal pursuant to 8 U.S.C. § 1252(a). In situations like this, where the BIA adopts and affirms the decision of the IJ, we review the decision of the IJ. *Partyka v. Att'y Gen.*, 417 F.3d 408, 411 (3d Cir. 2005). Whether an applicant has demonstrated past persecution or otherwise established a likelihood of future persecution is a question of fact, which we review for substantial evidence. *Abdille v. Ashcroft*, 242 F.3d 477 (3d Cir. 2001). This means that we must uphold the agency's findings "unless the evidence not only supports a contrary conclusion, but compels it." *Id.* at 484.

5

## A. Past Persecution

The IJ thought that Rudolphus was credible, but found on two alternate grounds that he had failed to prove past persecution. First, according to the IJ, Rudolphus did not establish that the incidents described above were on account of his religion or his ethnicity; rather, he (and his family) were "set upon by criminals who wished to rob [them]." (A.R. 40.) Second, the IJ concluded that none of the incidents were sufficiently severe to qualify as persecution; rather, they were "nothing more than street crime." (A.R. 40.)

Rudolphus argues on appeal that the IJ's conclusion on either ground was not supported by substantial evidence. We disagree. While the IJ may have minimized the mistreatment that Rudolphus suffered by describing it as "nothing more than street crime," this is not a situation in which the evidence compels the conclusion that the mistreatment was severe enough to qualify as persecution. Thus, we conclude that substantial evidence supported the IJ's finding that Rudolphus failed to establish that his experiences rose to the level of the "extreme concept" of persecution. *See Fatin*, 12 F.3d at 1243. Since this is an independently sufficient ground for finding that Rudolphus failed to demonstrate past persecution, we need not address whether substantial evidence supported the IJ's conclusion that the incidents did not occur on account of Rudolphus' Chinese ethnicity or his Christianity.

6

## B. Pattern or Practice of Persecution

The IJ also found that Rudolphus failed to demonstrate a pattern or practice of persecution of ethnic Chinese or Christians in Indonesia, either by the Indonesian government or by forces that the government is unwilling or unable to control, such that future persecution was probable. In support of this finding, the IJ emphasized that, while there may be uncontrolled anti-Christian violence in some parts of the country (such as Sulawesi and the Maluku Islands), Rudolphus did not establish that there is uncontrolled anti-Christian or anti-Chinese violence on the island of Java, which is where Rudolphus lived and where his family appears to remain.

Rudolphus argues on appeal that the IJ failed to adequately address the issue of "pattern or practice" in that it failed to consider the U.S. State Department International Religious Freedom Reports and Country Reports that Rudolphus had submitted as background materials. Rudolphus requests that we therefore remand his case so that the agency can re-address the issue having considered the background materials. In his oral opinion, however, the IJ specifically indicated that he had taken the Reports into consideration in reaching his decision. (A.R. 36.) We find no reason not to believe him. Moreover, our independent review of the background materials reveals that the IJ's conclusion that there was no pattern or practice of persecution is supported by substantial evidence. Although the Reports do indicate that, as the IJ acknowledged, there continue to be incidents of uncontrolled anti-Christian violence in Indonesia, a reasonable

7

adjudicator could conclude that the violence is not "sufficiently widespread" to constitute a national pattern or practice of persecution. *See Lie*, 396 F.3d at 537.

Since substantial evidence supports the IJ's findings regarding past persecution and regarding a pattern or practice of persecution, we therefore conclude that substantial evidence also supports the IJ's finding that Rudolphus failed to demonstrate that it was more likely than not that he would be persecuted if forced to return to Indonesia. Accordingly, we will not disturb the denial of his application for withholding of removal.

## IV. Conclusion

For the reasons discussed above, we will deny Rudolphus' petition for review.[1]

---

[1] Since Rudolphus does not address in his brief the IJ's denial of his application for relief under the CAT, neither will we.